## MARIN v. ELLIS.

(Circuit Court of Appeals, Eighth Circuit.
October 13, 1926.)

· No. 287.

1. Bankruptcy ⬉136(2)—Presumption, for purpose of turn-over order, that bankrupt continues to hold assets unlawfully withheld, grows weaker as time passes.

Relative to turn-over order, presumption that bankrupt continues to hold assets, which at time of adjudication he unlawfully withheld from trustee, grows weaker as time passes, till it finally ceases.

2. Bankruptcy ⬉446.

Any error in placing too high degree of proof on trustee petitioning for turn-over order was not prejudicial, if evidence did not reach lower degree contended for by him.

3. Bankruptcy ⬉446.

Petitioner, on petition to revise, has burden, not only of showing error, but that it was prejudicial.

4. Bankruptcy ⬉446—Under state of record on petition to revise denial of hold-over order, it cannot be said trustee made any adequate degree of proof, so as to make prejudicial any error in requirement of higher degree.

On petition to revise order denying turn-over order, in view of findings of referee, absence of evidence which was before referee and court, and delays in filing and bringing to hearing petition for turn-over order, *held*, it could not be said that proof by reasonable preponderance of evidence was made that bankrupt, at time of refusal of turn-over order, had and was able to turn assets unlawfully withheld, so as to make prejudicial any error in requiring higher degree of proof.

Petition to Revise Order of the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

In the matter of the bankruptcy of Robert Ellis. On petition of W. A. Marin, trustee, to revise order of court approving and confirming order of referee discharging and dismissing trustee's petition for turn-over order. Petition dismissed.

Richard Converse, of Minneapolis, Minn. (Kay Todd, Walter Fosnes, and Charles W. Sterling, all of St. Paul, Minn., on the brief), for petitioner.

A. M. Thompson, of Eveleth, Minn., for respondent.

Before SANBORN, STONE, and KENYON, Circuit Judges.

WALTER H. SANBORN, Circuit Judge. W. A. Marin, the trustee in bankruptcy of the estate of Robert Ellis, who was adjudged bankrupt on December 27, 1922, filed in this court on October 19, 1925, his petition to re-

15 F.(2d)—21

vise in matter of law the order of the District Court below, dated August 11, 1925, whereby it approved and confirmed the order of the referee in bankruptcy, dated April 27, 1925, by which the latter discharged and dismissed after final hearing on pleadings and evidence the petition of W. A. Marin, as trustee, filed November 7, 1923, for an order on the bankrupt, Ellis, to turn over to him goods, wares, merchandise, and cash of the value of $15,-000, which the trustee alleged was property of the bankrupt in his possession and under his control, which he was concealing from his trustee in bankruptcy.

The order of the referee of April 27, 1925, it will be noticed, was founded on his finding on pleadings and evidence that the trustee had failed to prove that the bankrupt, at the time that order was made, had possession or control of and could turn over to the trustee those goods, wares, and merchandise, and that cash or the proceeds thereof, of the value of $15,-000, or to any other amount, which the trustee alleged he had on December 27, 1922, when he was adjudged a bankrupt, and which, or the proceeds thereof, or some part thereof, the trustee had alleged that the bankrupt then and thereafter from December 27, 1922, to April 27, 1925, for two years and four months, held back, had and could turn over on April 27, 1925. The state of facts thus alleged was a very improbable one and a very difficult one to prove. This was especially so, in view of the fact that Ellis was adjudged a bankrupt on December 27, 1922, that the trustee did not file his petition with the referee for the turn-over of this property, or any part of it, until November 27, 1923, more than 10 months after the adjudication, and did not bring his petition on for hearing before the referee until June 17, 1924, more than 17 months after the adjudication.

[1] The legal presumption is that a bankrupt, who at the time of his adjudication in bankruptcy has and unlawfully holds back from his trustee in bankruptcy a part of his property, or of its proceeds, continues to hold it or them, but this presumption grows weaker as time passes, until it finally ceases to exist. The record presented to this court does not show that the trustee ever claimed, or notified the bankrupt that he would claim, that he had held back any of his property to which the trustee was entitled, until he filed his petition for the turn-over order, more than 10 months after the adjudication. In this state of the case the legal presumption that the bankrupt held that merchandise and cash, which the trustee alleged that he unlawfully

retained at the time of his adjudication, within his control, so that he could turn it or its proceeds over to the trustee when the referee denied the petition for the turn-over on April 27, 1925, was certainly not conclusive. The presumption that he then so held it was rebuttable by competent evidence of facts, of circumstances, of the lapse of time, and the question whether or not the bankrupt had in his control and could turn over the property, or the proceeds of it, which the trustee alleged he unlawfully retained, was conditioned by the evidence presented to the referee and to the court below.

This is a petition to revise in matter of law, and the error of law of the court below and of the referee, of which the trustee complains, is in the brief of his counsel stated in these words:

"The referee then ordered the petition of the trustee discharged, and his memorandum attached to his findings clearly shows that he did this for failure of the trustee to prove actual possession at the time and actual ability to comply with the order if made. The referee was of the opinion that such proof was necessary and the District Court was of the same opinion. It is in this respect that we contend that the referee and the District Court have fallen into error.

"The District Court states in its opinion: 'It is proposed here to lay a foundation for contempt proceedings and in that way to punish him by committing him to jail if he should not comply with the order of the court. The order now prayed for should therefore not be made, unless the evidence in support thereof is so clear that on violation thereof the court would unhesitatingly punish for contempt.' The District Court very plainly failed to distinguish between the so-called turn-over proceeding and proceedings to punish for contempt."

[2, 3] Conceding, as counsel for the trustee contends, but not admitting or deciding, that, while a clear preponderance of the competent evidence is sufficient to sustain a finding that a bankrupt has at the time of the making of a turn-over order and can turn over property he had and was required to deliver to the trustee at the time of his adjudication and that a higher degree of proof, to wit, proof beyond a reasonable doubt, is requisite to sustain proceedings to punish the bankrupt for contempt for failure to comply with such a turn-over order, it does not follow that a requirement of the higher degree of proof to sustain the turn-over order in this case was error of law prejudicial to the trustee. If the evidence did not rise to the lower degree of proof, and did not

justify, and the court refused to grant, the turn-over order, the error here alleged was not prejudicial to the trustee, and error without prejudice is no ground for reversal. Whether or not the evidence failed to rise to the lower degree of proof, and on that account justified the refusal of the referee to grant the turn-over order, cannot be certainly determined without the evidence in the case upon which the referee and the court below founded their orders. The burden is on him who alleges error not only to prove that it existed, but also to prove that it was prejudicial. The referee and the court below refused to grant the turn-over order on the evidence which was presented to them, but which the trustee has failed to present to this court.

[4] He has, however, made the findings of fact and conclusions of law of the referee an exhibit to his petition to revise, and from these we learn that the referee found that the bankrupt, Ellis, made a voluntary assignment of all his unexempt property to W. A. Marin, as trustee, for the benefit of his creditors, on November 23, 1922; that an involuntary petition in bankruptcy was filed against him on December 12, 1922; that he was adjudged a bankrupt on December 27, 1922; that prior to his voluntary assignment he had been engaged in a general merchandise business handling shoes, clothing, notions and dry goods at Eveleth, Minn.; that "it was conceded on the part of all the parties herein that said bankrupt is not a very intelligent man and that during the greater part of the time he was engaged in business, as above described, he was inflicted with an illness that had greatly handicapped him in conducting his business, and in some respects prevented him from giving proper attention to it, and for some time the business was in the hands of others and his family"; that at the time of his voluntary assignment the bankrupt was in the hospital at Rochester, Minn., and his business was then in charge of his minor son, a boy about 14 years of age, and other members of his family; that, while this bankrupt's mind was weak, the referee was of the opinion that he knew right from wrong, and was capable of realizing what he was doing; that he made a financial statement about nine months before his assignment, which showed a very satisfactory equity, on which he obtained credit; and that, when he filed his schedules in bankruptcy, they disclosed total assets amounting to $3,748.61, and total liabilities to the amount of $16,152.03, and that the operation of his business during the five months preceding his assignment disclosed a shortage of $9,000.

The referee concluded his findings of fact

in this way: "While this evidence shows there is a considerable amount of money unaccounted for, the bankrupt claims he has no funds in his hands or under his control at this time belonging to the estate and that he had no such funds in his hands or under his control at the time of filing his petition in bankruptcy. There is no other evidence tending to show that the bankrupt now has money or property in his hands or under his control belonging to the bankrupt estate."

In view of these findings of fact, of the absence of the evidence that was before the referee and the court, of the delays in filing and bringing to a hearing the petition to the referee for the turn-over order, and of the long time that elapsed, 17 months, between the adjudication in bankruptcy and the hearing of the petition for the turn-over order, we are not convinced that the lower degree of proof, the reasonable preponderance of the evidence, that the bankrupt had and was able to turn over on April 27, 1925, when the referee refused to grant the turn-over order, the merchandise and cash sought, was ever made in this case, and, in the absence of such lower degree of proof, the ruling of the court below that a higher degree was requisite to justify the turn over, if erroneous, could not have been prejudicial.

Let the petition to revise be dismissed, with costs.